Elizabeth A. McNamara (*Pro Hac Vice* Application forthcoming)
    lizmcnamara@dwt.com
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Telephone: (212) 603-6437
Fax: (212) 489-8340

Sean M. Sullivan, Esq. (Cal. Bar No. 229104)
    seansullivan@dwt.com
Arleen Fernandez (Cal. Bar No. 318205)
    arleenfernandez@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Telephone: (213) 633-6800
Fax: (213) 633-6899

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP; UNIVERSAL CITY STUDIOS LLC; UNIVERSAL TELEVISION LLC; UNIVERSAL CONTENT PRODUCTIONS LLC; DREAMWORKS ANIMATION LLC; DISNEY ENTERPRISES, INC.; PARAMOUNT PICTURES CORPORATION; AMAZON CONTENT SERVICES LLC; APPLE VIDEO PROGRAMMING LLC; WARNER BROS. ENTERTAINMENT INC.; NETFLIX US, LLC; COLUMBIA PICTURES INDUSTRIES, INC.; and, SCREEN GEMS, INC. | ) Case No. 2:21-CV-09361<br>)<br>) **COMPLAINT FOR COPYRIGHT**<br>) **INFRINGEMENT**<br>)<br>) **DEMAND FOR JURY TRIAL**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Plaintiffs, | ) |
| vs. | ) |
| DWAYNE ANTHONY JOHNSON d/b/a ALLACCESSTV and QUALITY RESTREAMS; and DOES 1-20,<br>Defendants. | )<br>)<br>)<br>)<br>) |

Plaintiffs bring this Complaint for direct and secondary copyright infringement under the Copyright Act (17 U.S.C. § 101 *et seq.*) against Dwayne Anthony Johnson ("Johnson") d/b/a AllAccessTV ("AATV") and Quality Restreams, and DOES 1-20, the individuals or entities, who, along with Dwayne Anthony Johnson, own or operate the infringing services of AATV and Quality Restreams (collectively with Johnson, "Defendants"). This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), 1367, and 17 U.S.C. §§ 501, 501(b). Plaintiffs allege, on personal knowledge as to themselves and information and belief as to others, as follows:

## INTRODUCTION

1. Defendants own and operate AATV, an infringing Internet Protocol television ("IPTV") and video-on-demand ("VOD") service that sells—through an expanding network of resellers—unauthorized access to copyrighted movies and television programs through thousands of live and title-curated television channels and VOD offerings. Defendants' subscribers access infringing content through various AATV web-based applications for use on various platforms, including smart TVs, computers, set-top boxes, or mobile and tablet devices (collectively the "AATV Platforms"), which Defendants operate and control.

2. The channels and VOD features offered by Defendants exploit the rights to many of the world's most popular movies and television programs, such as *The Godfather*, *Harry Potter*, *Jurassic Park*, and *The Office*. **Exhibit A** contains a non-exhaustive list of works whose copyrights are owned or exclusively controlled by Plaintiffs that Defendants exploit (the "Copyrighted Works").[1] Defendants do not have a license or any other right to engage in this blatant exploitation of the Copyrighted Works. As a result, Defendants' infringing IPTV and VOD services

---

[1] Plaintiffs are aware of countless other works owned or exclusively controlled by Plaintiffs that Defendants unlawfully exploit.

provide Defendants' subscribers with unauthorized access to Plaintiffs' Copyrighted Works.

3.     Defendants also own and operate Quality Restreams, a related enterprise that provided and continues to provide content—including Plaintiffs' Copyrighted Works—to various prominent IPTV services, including AATV. Similar to the AATV service, Quality Restreams provides these IPTV operators (and their customers) with access to copyrighted movies and television programs through thousands of live television channels and VOD offerings.

4.     Through both the AATV and Quality Restreams services, Defendants illegally reproduce and publicly perform Plaintiffs' Copyrighted Works, and facilitate, induce, and contribute to the infringement of these works by others.

5.     Defendants' ongoing infringement is willful.  Defendants know they cannot exercise Plaintiffs' exclusive rights without a license.  Defendants have engaged in concerted efforts to conceal their role in these unlawful enterprises, while continuing to offer and profit from their blatantly infringing services.  Among other things, many of the websites Defendants use to operate the AATV and Quality Restreams services conceal registration information from public access.  Likewise, Defendants have developed a massive and elaborate AATV reseller system to try to insulate themselves from responsibility for the infringing service, as well as to dramatically increase their ill-gotten profits.

6.     Plaintiffs and/or their affiliates have invested and continue to invest substantial resources and effort each year to develop, produce, distribute, and publicly perform their Copyrighted Works through legitimate channels which are part of a broad content-delivery ecosystem.  Defendants' unlawful conduct directly subverts that ecosystem for Defendants' enrichment.  Defendants' conduct infringes upon Plaintiffs' right to control their Copyrighted Works and to determine the terms on which those Copyrighted Works are licensed and provided to consumers.

///

7.     Defendants' unlawful conduct irreparably harms Plaintiffs.  Defendants have already induced hundreds of businesses and individuals to participate in these illicit enterprises, and their reseller network will only continue to expand unless Defendants' conduct is restrained.  Plaintiffs therefore bring this action to stop Defendants' ongoing copyright infringement.

**JURISDICTION AND VENUE**

8.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), and 17 U.S.C. § 50l(b).

9.     This Court has personal jurisdiction over Defendants because Defendants have committed copyright infringement within California and caused injuries to Plaintiffs in this State.  Defendants have conducted business with California consumers through resellers that operate in California.

10.     Defendants use or have used several websites that they own or control to operate and offer the infringing AATV and Quality Restreams services, including aatvdigitalmedia.com, aatvpanel.com, aatvapp.live, myaatv.com, aatvdigital.com, aatvwebplayer.com, allaccessiptv.com, allaccesstv.live, tv.allaccesstv.live, vod.allaccesstv.live, kids.allaccesstv.live, aatv.media, qualityrestreams.com, qsplaylist.com, qualitystreamz.guru, qsprovider.com, mediaflo.net, vpnsafevault.com, backoffice.vpnsafevault.com, and v2.dmdapi.com (collectively, the "Websites").  Through some of these Websites, Defendants have marketed the infringing services to customers in California and recruited resellers located in California and who operate in California, and Defendants have profited from those transactions.

11.     Defendants' unauthorized exploitation of the Copyrighted Works has caused harm to Plaintiffs in California.  Defendants reasonably expected, or should have reasonably expected, their acts to cause harm in California given that Plaintiffs maintain either headquarters or offices in California, and it is the location of a significant portion of Plaintiffs' production and distribution operations.

12.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(6), 1400(a).

**THE PARTIES**

13.     Plaintiff Universal City Studios Productions LLLP ("UCSP") is a limited liability limited partnership organized under the laws of the State of Delaware with its principal place of business in Universal City, California. UCSP owns or controls copyrights or exclusive rights in content that it or its affiliates produce or distribute.

14.     Plaintiff Universal City Studios LLC (formerly known as Universal City Studios LLLP and Universal City Studios, Inc.) ("UCS") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Universal City, California.  UCS owns or controls the copyrights or exclusive rights in the content that it or its affiliates produce or distribute.

15.     Plaintiff Universal Television LLC (formerly known as NBC Studios, Inc.) ("UT") is a limited liability company organized under the laws of the State of New York with its principal place of business in Universal City, California. UT owns or controls the copyright or exclusive rights in the content that it or its affiliates produce or distribute.

16.     Plaintiff Universal Content Productions LLC (formerly known as Universal Network Television LLC) ("UCP") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Universal City, California.  UCP owns or controls the copyright or exclusive rights in the content that it or its affiliates produce or distribute.[2]

17.     Plaintiff DreamWorks Animation LLC ("DreamWorks") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Glendale, California.  DreamWorks owns or controls

---

[2] Plaintiffs UCSP, UCS, UT, and UCP are collectively referred to herein as "Universal."

5

the copyrights or exclusive rights in the content that it or its affiliates produce or distribute.

18.    Plaintiff Disney Enterprises, Inc. ("Disney") is a corporation organized under the laws of the State of Delaware with its principal place of business in Burbank, California.  Disney owns or controls copyrights or exclusive rights in content that it or its affiliates produce or distribute.

19.    Plaintiff Paramount Pictures Corporation ("Paramount") is a corporation organized under the laws of the State of Delaware with its principal place of business in Los Angeles, California.  Paramount owns or controls copyrights or exclusive rights in content that it or its affiliates produce or distribute.

20.    Plaintiff Amazon Content Services LLC ("Amazon") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Seattle, Washington.  Amazon owns or controls the copyrights or exclusive rights in the content that it or its California-based affiliates produce or distribute.

21.    Plaintiff Apple Video Programming LLC ("Apple") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Culver City, California.  Apple Video Programming LLC owns or controls copyrights or exclusive rights in content that it or its affiliates produce or distribute.

22.    Plaintiff Warner Bros. Entertainment Inc. ("Warner Bros.") is a corporation organized under the laws of the State of Delaware with its principal place of business in Burbank, California.  Warner Bros. owns or controls copyrights or exclusive rights in content that it or its affiliates produce or distribute.

23.    Plaintiff Netflix US, LLC ("Netflix") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Los Angeles, California.  Netflix owns or controls copyrights or exclusive rights in content that it or its affiliates produce or distribute.

24.     Plaintiff Columbia Pictures Industries, Inc. ("Columbia") is a corporation organized under the laws of the State of Delaware with its principal place of business in Culver City, California.  Columbia owns or controls copyrights or exclusive rights in content that it or its affiliates produce or distribute.

25.     Plaintiff Screen Gems, Inc. ("Screen Gems") is a corporation organized under the laws of the State of Delaware with its principal place of business in Culver City, California.  Screen Gems owns or controls copyrights or exclusive rights in content that it or its affiliates produce or distribute.

26.     Plaintiffs have obtained Certificates of Copyright Registration for their Copyrighted Works.  **Exhibit A** contains a non-exhaustive list of movie and television program titles, along with their registration numbers, dates of registration, and a listing of the corresponding entity that owns or controls exclusive rights in the copyright, which Defendants have infringed, and continue to infringe upon, as of the date of this filing.

27.     Defendant Dwayne Anthony Johnson d/b/a AllAccessTV and Quality Restreams resides in Frisco, Texas.  He owns and operates the infringing enterprises AATV and Quality Restreams, as well as their associated websites, domains, and web-based applications.

28.     Plaintiffs do not presently know the true names of DOE defendants. Plaintiffs are informed and believe, and on the basis of that information allege, that each of the DOE defendants was in some manner proximately responsible for the events alleged in this Complaint and for the injuries and damages alleged herein. Plaintiffs will amend this Complaint to assert the true names and/or capacities of the DOE defendants when their names are ascertained.

## BACKGROUND FACTS

**Plaintiffs and Their Copyrighted Works**

29.     Plaintiffs and/or their affiliates produce and distribute many of the world's most coveted, lauded, and award-winning motion pictures and television

1  programs.

2      30.     Plaintiffs own or hold the exclusive U.S. rights to, among other things,

3  reproduce, distribute, and publicly perform the Copyrighted Works, including by

4  means of streaming those works over the Internet to the public at large.

5      31.     Plaintiffs themselves, or through their affiliates, authorize the legitimate

6  distribution, reproduction, and public performance of the Copyrighted Works in

7  various formats and through multiple distribution channels, including, by way of

8  example: (1) through authorized, licensed cable and direct-to-home satellite services

9  (including basic, premium, and "pay-per-view"); (2) through licensing to broadcast

10 television networks and linear video programming services; (3) through authorized,

11 licensed Internet VOD services, including those operated by Amazon Prime Video,

12 iTunes, Apple TV+, Netflix, Google Play, Disney+, Peacock, and Vudu; (4) through

13 authorized, licensed Internet or over-the-top ("OTT") streaming services, including

14 those offered by Hulu+ Live TV, DirecTV Stream, fuboTV, Sling TV, and YouTube

15 TV; (5) for private home viewing on DVD, Blu-ray, and UHD discs; (6) for

16 exhibition in theaters; and (7) for over-the-air broadcast television.

17     32.     Plaintiffs have not authorized Defendants to copy or stream any of the

18 Copyrighted Works, or to exercise any of Plaintiffs' other exclusive rights under the

19 Copyright Act, 17 U.S.C. § 106.

20 **Defendants' Infringing Conduct**

21                     *Defendants' Illegal AATV Service*

22     33.     AATV is an IPTV service that illegally streams live and on-demand

23 content in high definition.  Through the AATV Platforms, which Defendants operate

24 and control, Plaintiffs' Copyrighted Works have been and are being streamed to

25 AATV subscribers without Plaintiffs' authorization, in violation of Plaintiffs'

26 exclusive reproduction rights and public performance rights, 17 U.S.C. §§ 106(1),

27 106(4).

28     34.     Defendants market the AATV service and attract paying subscribers

through a growing network of resellers, each of which sells AATV subscriptions. As explained below, Defendants have previously used the websites aatvdigitalmedia.com and aatvpanel.com as the primary interfaces through which customers pay for their AATV subscriptions and receive credentials to access the infringing service.  Defendants now use vpnsafevault.com and backoffice.vpnsafevault.com as the sites through which customers can purchase AATV subscriptions and receive user credentials.

35.   In June 2021, after connecting with a reseller, customers were first directed to navigate to aatvdigitalmedia.com, where they were then redirected to aatvpanel.com to sign up for the AATV service and create the credentials they later use to access the AATV Platforms.  Below is a screenshot of the aatvdigitalmedia.com homepage:



36.   Through aatvpanel.com, Defendants offered customers subscription packages for the infringing AATV service at prices ranging from $10.00 to $45.00

per month, depending on the package selected and number of connections available to a customer.  Customers were also able to "add-on" certain features for free, such as international live channels, as reflected by the screenshots below:





37.     In attempt to cover up their illicit operation, Defendants now direct users to the site backoffice.vpnsafevault.com to purchase and manage AATV subscriptions.  This site is stripped of all AATV branding and designed to appear like it sells VPN software to consumers, as shown in the image below.  However, Defendants are actually selling subscriptions to their AATV service through this site.  The process to purchase a subscription and create user credentials is the same

as it was via aatvpanel.com.  However, unlike with aatvpanel.com, Defendants are not using aatvdigitalmedia.com to link users to the backoffice.vpnsafevault.com site to sign up for the AATV service.  Rather, subscribers now receive instructions on how to access the backoffice.vpnsafevault.com site via word of mouth.  As explained in further detail below, Defendants' actions are consistent with an intent to operate the AATV service in covert manner because they know the service is illegal.



38.    In order to access the infringing AATV Platforms after purchasing a subscription, customers must contact a support line operated by AATV, to connect with an AATV tech support agent.  The AATV agent then directs customers to download the correct AATV Platform, which depends on whether the customer utilizes an iOS or Android device.  Customers can download the AATV Platforms onto their devices, such as smart TVs, computers, set-top boxes, and mobile and tablet devices.

39.    Via the AATV Platforms, Defendants offer a feature titled "Live TV," which provides customers with access to over 2,500 channels from across the

globe—a collection so extensive that it requires organizing the channels into

categories such as "USA Network TV," "USA Documentary," and "USA Movie

Networks," as reflected in the screenshot below:



40.    Defendants' IPTV offerings include live television channels that are

streamed within seconds of the original source of the telecast.  In other words,

television programs airing on a particular television channel (*e.g.*, A&E, FX,

Comedy Central) are streamed nearly at the same time through the AATV Platforms,

which means AATV subscribers can view these television programs virtually

simultaneous with the telecast, but without subscribing to those channels through a

legitimate service.  Defendants' IPTV services include major networks like ABC,

NBC, and Fox, as well as paid channels like A&E, MTV, BET, SyFy, USA

Network, and premium channels such as HBO and Cinemax.

41.     Once a subscriber clicks on a channel offering, Defendants transmit the content playing on the channel—frequently one of Plaintiffs' Copyrighted Works—to the subscriber.  Below is a screenshot depicting an episode of *The Office*, one of Plaintiffs' Copyrighted Works, on the live channels streamed by Defendants:



42.     In addition to live television channels, Defendants also offer "24/7" title-curated channels devoted to specific television series, movies, or content collections.  Unlike the live television channels Defendants illegally offer, Defendants' 24/7 channels do not hijack an authorized transmission stream, but rather reproduce and assemble the episodes, movies, or other content into a loop for the purpose of transmitting them on a continuous basis to an AATV subscriber.

43.     Defendants offer some of Plaintiffs' most popular Copyrighted Works via these 24/7 channels—all without Plaintiffs' authorization.  For example, the 24/7 channel dedicated to Warner Bros.' *Harry Potter* continuously streams movies from

1  the series, as shown below.  Likewise, the 24/7 channel dedicated to Universal's

2  *Jurassic Park* only streams movies from that series.

3

4 

5

6

7

8

9

10

11

12

13

14 

15

16

17

18

19

20

21

22

23

24

25

26      44.    Defendants' 24/7 channels infringe not only Plaintiffs' exclusive right of

27  public performance, but also their exclusive right to reproduce their Copyrighted

28  Works.  Plaintiffs' Copyrighted Works must be illegally copied and stored in order to

be streamed on a 24/7 channel.  Defendants either create these copies, and as a result, directly infringe Plaintiffs' reproduction rights, or Defendants knowingly, materially contribute to, or induce third parties to make those copies, and thereby secondarily infringe Plaintiffs' exclusive reproduction rights.

45.    Along with the live television and 24/7 channels, Defendants also offer movies and television programs—including Plaintiffs' Copyrighted Works—for on-demand viewing through their VOD service on the AATV Platforms. For example, with the click of a button, AATV subscribers are able to stream some of Plaintiffs' most well-known works, such as Paramount's *The Godfather*, Disney's *Toy Story 3*, Columbia's *Spider-Man*, Netflix's *Da 5 Bloods*, Apple's *See*, and Amazon's *Ted Bundy: Falling for a Killer* (as depicted in the screenshots below). Defendants do not have licenses to utilize any Copyrighted Work through their VOD service and, therefore, Defendants' VOD service infringes Plaintiffs' exclusive reproduction and public performance rights.







16





46.    Customers purchase subscriptions to Defendants' VOD service through the same websites they use to subscribe to Defendants' IPTV service.    These customers can "add on" packages that include Defendants' VOD service, such as the "Premium Package," which allows users to access VOD and "Premium Movie" content for an additional $15 per month.

47.    As is true of Defendants' IPTV service, the quantity of copyrighted content available through the VOD service is massive.  Defendants currently offer over 600 movie titles and 600 television series for on-demand viewing on the AATV Platforms.

48.    The VOD service organizes this content into numerous categories, including the streaming services on which the movies and television series appear,

such as "Netflix," "Amazon Prime Video," "Hulu," and "Disney+," as shown in part in the screenshot below.  Defendants' VOD library includes content exclusively found on streaming services such as Netflix, Disney+, Amazon Prime Video, and Apple TV+.



*Defendants' Infringing Quality Restreams Service*

49.    Defendants also own and operate Quality Restreams, which has provided and continues to provide content to several prominent IPTV services. Quality Restreams accomplishes this by providing IPTV operators with access to certain IP addresses and/or domain-based access through which Defendants stream live channels and VOD offerings, including Plaintiffs' Copyrighted Works.

50.    Quality Restreams has used several disparate domains, including qualityrestreams.com, qsplaylist.com, qualitystreamz.guru, and qsprovider.com, in order to stream and provide content to several IPTV services.  For instance,

CosmosTV, an illicit IPTV service, was sourcing content from a content delivery server located at IP address 23.237.94.34, an address affiliated with several websites owned and/or operated by Defendants, including qsplaylist.com, myaatv.com, and allaccessiptv.com.

51.     Defendants advertise the Quality Restreams service on multiple online forums, claiming to provide high quality content to IPTV operators.  For instance, in or about October 2019, Defendants, under the username DJ_Boxx, advertised their Quality Restreams service on IPTV.Community, an online forum where operators of IPTV services connect.  In that advertisement, Defendants claim that they are able to provide IPTV companies with, among other things, over 3,200 channels and have a commitment to assist any IPTV company that is looking for "trust and loyalty." A screenshot of this advertisement is included below:



52.     AATV also obtains its content—including Plaintiffs' Copyrighted Works—from Quality Restreams.  Among other things, AATV's content is sourced from mediaflo.net.  Until recently, one of mediaflo.net's subdomains, shou06.mediaflo.net, used an IP address (23.237.162.170) that is very close to the IP address of qsplaylist.com (23.237.94.34).  The AATV Platform for Android users also previously sourced its images from qsplaylist.com.  Further, aatvapp.live,

1    a website affiliated with AATV, has used the IP address 104.243.41.74, which is

2    also associated with qsplaylist.com, qualitystreamz.guru, and qsprovider.com.

3        53.    Defendants are behind the infringing AATV and Quality Restreams

4    services.  Among other things, Johnson is a registered manager of VPN Safe Vault

5    LLC, a company that bears a virtually identical name to the domain

6    backoffice.vpnsafevault.com, the site through which Defendants currently sell

7    AATV subscriptions.  Moreover, the username DJ_Boxx is connected to the Skype

8    ID "Dwayne.johnson34," and the listed date of birth on DJ_Boxx's profile also

9    matches Johnson's date of birth.  Johnson is also the registrant for myaatv.com at the

10   IP address 23.237.94.34—the same IP address for qsplaylist.com.  This IP address is

11   within the same address range leased to The MediaBoxx, an entity owned and

12   operated by Defendant Johnson.  Johnson also administered a Facebook group for

13   AATV resellers that went by a virtually identical name, MediaBoxx Corporation

14   confirming that Johnson owns and operates this infringing streaming service.

15                *Defendants Use a Growing Network of Resellers to Expand*

16                *the Infringement of Plaintiffs' Copyrighted Works*

17       54.    Defendants operate their AATV service primarily through an extensive

18   and expanding network of resellers.  Indeed, the sheer breadth of Defendants'

19   reseller program is astounding.  Defendants themselves claim to have over

20   600+ "sales agents" and more than 37,000 customers on their Facebook page.

21       55.    Defendants operate the reseller program as a multilevel marketing

22   scheme.  Here's how it works: Defendants recruit individuals, namely AATV

23   customers, to sell subscriptions on their behalf.  In order to purchase an AATV

24   subscription, customers must connect with a reseller.  Upon connecting with a

25   reseller, customers are then instructed on how to sign up for the AATV service and

26   are also informed that they have the ability to refer new customers and become

27   resellers themselves.  Resellers earn money based on their recruits' sales as well as

28   their own.  For example, in 2020, if a recruit sold a $25 per month subscription, the

reseller that recruited him or her earned a $10 commission on that sale.  As a result, resellers are encouraged to recruit as many individuals as possible in order to maximize their commissions.  Resellers also obtain discounts on their own AATV subscriptions in exchange for customer referrals.

56.    To market and promote the reseller program, as well as the infringing AATV Platforms, Defendants created and administered the Facebook Group MediaBoxx Corporation, a private group exclusively available to AATV resellers and which, at one point, had more than 780 members (as shown in the screenshot below).



57.    Defendants also host webinars to recruit resellers, and, in advertisements for these webinars on social media platforms, describe AATV as a streaming "franchise opportunity," as depicted in the image below:



58.     Defendants' reseller program plays a pivotal role in their infringing commercial enterprise.  Defendants recruit resellers with the objective of using their networking and marketing efforts to further attract paying subscribers, thereby dramatically increasing Defendants' customer base and profits.  More resellers means more customers buying illegal access to the Copyrighted Works and other copyrighted content, and more money flowing into Defendants' pockets.

59.     By operating this ever-expanding reseller program, including expansion overseas (*e.g.*, in the Philippines), Defendants have dramatically increased their ill-gotten profits from the mass infringement of Plaintiffs' Copyrighted Works. Indeed, Defendants have boasted on social media platforms about generating over $3,000,000 in annual revenue from their operation of the infringing AATV service.



*Defendants' Infringement Is Willful*

60.     Defendants' modus operandi is evidence of their willful conduct. By way of example, only, Defendants have structured the AATV service so that a customer may only purchase an AATV subscription from a reseller.  Defendants setup the reseller program in this way to try to insulate themselves from responsibility for these infringing services and as an attempt to (unsuccessfully) remain incognito.  As another example, as described above, Defendants now sell and

manage subscriptions through www.backoffice.vpnsafevault.com, a website that has been stripped of all AATV branding and designed to appear that it sells VPN software instead of subscriptions to their illicit AATV service.  Defendants have also stopped linking aatvdigitalmedia.com to the site where subscribers can purchase subscriptions and receive user credentials.  Subscribers now receive instructions on how to access this site via word of mouth.  These actions and Defendants' use of a complex and seemingly endless web of various websites, domain names, and applications show Defendants know their conduct is unlawful.  Moreover, Defendants have shielded ownership information for certain domains underlying both the Quality Restreams and AATV services by privacy proxies and have also created private messaging groups for resellers.  Defendants have taken all of these steps in an effort to hide the illegality of their conduct.

*Defendants' Mass Infringement Causes Plaintiffs*

*Immediate and Irreparable Harm*

61.     The scope of Defendants' infringement of Plaintiffs' Copyrighted Works is massive and growing.  Defendants infringe Plaintiffs' Copyrighted Works twenty-four hours a day, seven days a week throughout the United States.

62.     Plaintiffs exercise their exclusive rights by licensing their Copyrighted Works to distributors and downstream services, thereby satisfying the demand for their copyrighted content through legitimate channels.  Plaintiffs, not Defendants, have the right to decide where, when, and how their content will be distributed to the public. Defendants' conduct usurps Plaintiffs' control over the exercise of these exclusive rights, interfering with those distribution strategies.

63.     Defendants illegally and unfairly compete with live TV streaming service providers that pay for permission to retransmit broadcast television.  Defendants offer access to live TV over the Internet but refuse to pay for the licenses that the law requires a person or entity to have before streaming the Copyrighted Works.  The result is unauthorized television and movie content streamed over the Internet in a manner

that directly competes with, and undermines, authorized cable and Internet streaming services.  Defendants' conduct therefore also interferes with Plaintiffs' existing relationships with legitimate services that offer live TV programming.

64.    Defendants also illegally and unfairly compete with Plaintiffs' affiliated and licensed subscription VOD services, such as Amazon Prime Video, Netflix, Disney+, iTunes, Apple TV+, HBO Max, Hulu, Peacock, and others, which have the rights to offer on-demand content, often exclusively, to their subscribers. Defendants offer a library of titles not available on any single licensed VOD service, but refuse to pay for the licenses that the law requires a person or entity to have before streaming the Copyrighted Works.  Again, the result is unauthorized television and movie content streamed over the Internet in a manner that directly competes with, and undermines, authorized VOD services.  As such, Defendants also interfere with Plaintiffs' affiliated VOD offerings and Plaintiffs' existing relationships with legitimate services that license and offer VOD content.

65.    Defendants have an unfair competitive advantage over legitimate licensed services.  The legitimate services negotiate their licenses and abide by contractual restrictions.  Defendants need not honor such contractual restrictions because they circumvent the licensing process altogether.  This unfair competition undermines Plaintiffs' relationships with licensees, who legitimately stream content over the Internet and are a robust and growing part of Plaintiffs' businesses.

66.    Defendants' infringing conduct will only continue to grow if it is not restrained.  Defendants' network of resellers and subscribers will continue to expand, and with it the infringement of Plaintiffs' Copyrighted Works will grow exponentially.  All of this conduct is causing immediate and irreparable harm to Plaintiffs, and that harm will continue until Defendants are enjoined from engaging in their illegal conduct.

67.    Plaintiffs now bring this action to protect their rights and to put an end to Defendants' harmful conduct.

## FIRST CAUSE OF ACTION

### (Direct Copyright Infringement)

68.     Plaintiffs incorporate herein by reference each and every averment contained in paragraphs 1 to 63 inclusive.

69.     Under Section 106 of the Copyright Act, Plaintiffs own the exclusive right to, among other things, publicly perform and reproduce their Copyrighted Works.

70.     Plaintiffs have not authorized Defendants to publicly perform or reproduce their Copyrighted Works or to exercise any of Plaintiffs' other exclusive rights.

71.     Defendants have infringed and continue to infringe Plaintiffs' Copyrighted Works by violating Plaintiffs' exclusive rights to publicly perform and reproduce the Copyrighted Works.  Without Plaintiffs' authorization, Defendants (a) publicly perform Plaintiffs' Copyrighted Works listed on **Exhibit A**, as well as many other works owned or exclusively controlled by Plaintiffs, by transmitting performances of the Copyrighted Works over the Internet to AATV and Quality Restreams customers; and (b) reproduce the Copyrighted Works in connection with multiple offerings, including, but not limited to, the infringing services' VOD service and 24/7 channels.

72.     Defendants' acts of infringement are willful, in disregard of and with indifference to Plaintiffs' rights.

73.     As a direct and proximate result of the infringements by Defendants, Plaintiffs are entitled to damages and Defendants' profits in amounts to be proven at trial.

74.     Alternatively, at their election, Plaintiffs are entitled to statutory damages, up to the maximum amount of $150,000 per infringed work by virtue of Defendants' willful infringement, or for such other amounts as may be proper under 17 U.S.C. § 504.

75.     Plaintiffs further are entitled to recover their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

76.     As a direct and proximate result of the foregoing acts and conduct,

27

Plaintiffs have sustained and will continue to sustain substantial, immediate and irreparable injury, for which there is no adequate remedy at law.  Unless enjoined and restrained by this Court, Defendants will continue to infringe Plaintiffs' rights in the Copyrighted Works.  Plaintiffs are entitled to injunctive relief under 17 U.S.C.§ 502.

**SECOND CAUSE OF ACTION**

**(Contributory Copyright Infringement by Knowingly and Materially Contributing to the Infringement of the Copyrighted Works)**

77.   Plaintiffs incorporate herein by reference each and every averment contained in paragraphs 1 to 72 inclusive.

78.   To the extent Defendants claim that third parties, not Defendants, violate Plaintiffs' exclusive rights under the Copyright Act, Defendants are knowingly and materially contributing to such infringement.

79.   Defendants have actual knowledge of the third parties' infringement. Defendants systematically amassed from third parties thousands of channels, including 24/7 channels, which contain Copyrighted Works that necessarily were reproduced before being compiled into endless loops of curated content.  Defendants know these third parties did not have authorization to create the copies of these works.

80.   Defendants materially contribute to the third parties' infringement. Defendants configure and promote the use of the AATV and Quality Restreams services to connect customers to unauthorized online sources streaming Plaintiffs' Copyrighted Works.  The operators of these repositories or others operating in concert with them, control facilities and equipment used to copy and stream performances of Plaintiffs' Copyrighted Works.  The operators of these repositories, or others operating in concert with them directly, infringe Plaintiffs' exclusive reproduction and public performance rights by copying and publicly performing the Copyrighted Works without Plaintiffs' authorization.  By operating the Websites and supplying the AATV Platforms, Defendants facilitate, encourage, and enable the

direct infringement of Plaintiffs' Copyrighted Works.

81.   Defendants' knowing and material contribution to the infringement of Plaintiffs' rights in each Copyrighted Work constitutes a separate and distinct act of infringement for which Defendants are liable.

82.   Defendants' knowing and material contribution to the infringement of the Copyrighted Works is willful, intentional, and purposeful, and in disregard of and with indifference to Plaintiffs' rights.

83.   As a direct and proximate result of Defendants' infringement, Plaintiffs are entitled to damages and Defendants' profits in amounts to be proven at trial.

84.   Alternatively, at their election, Plaintiffs are entitled to statutory damages, up to the maximum amount of $150,000 per infringed work, by virtue of Defendants' willful infringement, or for such other amounts as may be proper under 17 U.S.C. § 504.

85.   Plaintiffs further are entitled to recover their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

86.   As a direct and proximate result of the foregoing acts and conduct, Plaintiffs have sustained and will continue to sustain substantial, immediate and irreparable injury, for which there is no adequate remedy at law.  Unless enjoined and restrained by this Court, Defendants will continue to infringe Plaintiffs' rights in the Copyrighted Works.  Plaintiffs are entitled to injunctive relief under 17 U.S.C. § 502.

### THIRD CAUSE OF ACTION

### (Intentionally Inducing the Infringement of the Copyrighted Works)

87.   Plaintiffs incorporate herein by reference each and every averment contained in paragraphs 1 to 82 inclusive.

88.   To the extent Defendants claim third parties are exercising Plaintiffs' exclusive public performance and reproduction rights under the Copyright Act, Defendants induce such infringement by supplying and promoting the use of the

AATV and Quality Restreams services to resellers and connecting customers to unauthorized online sources that stream Plaintiffs' copyrighted works, and by actively inducing, encouraging, and promoting the use of Quality Restreams and AATV for copyright infringement.

89.     Defendants' intentional inducement of the infringement of each Copyrighted Work constitutes a separate and distinct act of infringement.

90.     Defendants' inducement of the infringement of the Copyrighted Works is willful, intentional, and purposeful, and in disregard of and with indifference to Plaintiffs' rights.

91.     As a direct and proximate result of the infringement that Defendants intentionally induce, Plaintiffs are entitled to damages and Defendants' profits in amounts to be proven at trial.

92.     Alternatively, at their election, Plaintiffs are entitled to statutory damages, up to the maximum amount of $150,000 per infringed work, by virtue of Defendants' willful infringement, or for such other amounts as may be proper under 17 U.S.C. § 504.

93.     Plaintiffs further are entitled to recover their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

94.     As a direct and proximate result of the foregoing acts and conduct, Plaintiffs have sustained and will continue to sustain substantial, immediate and irreparable injury, for which there is no adequate remedy at law.  Unless enjoined and restrained by this Court, Defendants will continue to infringe Plaintiffs' rights in the Copyrighted Works.  Plaintiffs are entitled to injunctive relief under 17 U.S.C. § 502.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants and for the following relief:

1.     For preliminary and permanent injunctions (a) enjoining Defendants and any officers, agents, servants, employees, attorneys, and all persons acting in

active concert or participation with them, including AATV's resellers, from publicly performing, reproducing, distributing or otherwise infringing in any manner (including, without limitation, by materially contributing to or intentionally inducing the infringement of) any of Plaintiffs' rights under the Copyright Act in any of the Copyrighted Works, as well as any other works Plaintiffs own or control, including, without limitation, by publicly performing or reproducing those Works, or by distributing any software or providing any service or device that does or facilitates any of the foregoing illegitimate acts; and (b) impounding hardware in Defendants' possession, custody, or control, and any and all documents or other records in Defendants' possession, custody, or control relating to Defendants' direct and secondary infringement of the Copyrighted Works.

2.     For entry of a preliminary injunction enjoining the domain name registrar for the Websites, as well as all others who receive notice of the Court's order, from allowing the infringing domain names to be modified, sold, transferred to another owner, or deleted.

3.     For entry of a preliminary injunction enjoining Defendants' resellers from continuing to market and distribute the Quality Restreams and AATV services.

4.     For entry of an order requiring Defendants, as well as all others who receive notice of the court's order, to transfer the Websites' domains, and any additional domain names found to be associated with Defendants' operation of the AATV and Quality Restreams services, to a registrar to be appointed by Plaintiffs to re-register the domain names in Plaintiffs' names, or the name(s) of their designee(s), and under Plaintiffs' ownership.

5.     For Plaintiffs' damages and Defendants' profits in such amount as may be found; alternatively, at Plaintiffs' election, for maximum statutory damages or for such other amounts as may be proper pursuant to 17 U.S.C. § 504(c).

6.     For an accounting, the imposition of a constructive trust, restitution of Defendants' unlawful proceeds from copyright infringement, and damages

according to proof.

7.    For a declaration that Defendants' activities as alleged herein constitute direct and secondary copyright infringement of Plaintiffs' exclusive rights under copyright in violation of 17 U.S.C. § 106.

8.    For prejudgment interest according to law.

9.    For Plaintiffs' attorneys' fees and full costs incurred in this action pursuant to 17 U.S.C. § 505.

10.   For all such further and additional relief, in law or in equity, to which Plaintiffs may be entitled or which the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues triable by jury.


DATED: December 2, 2021                     _____/s/ Sean M. Sullivan_____
                                            Sean M. Sullivan
                                            Arleen Fernandez
                                            DAVIS WRIGHT TREMAINE LLP
                                            865 South Figueroa Street, 24th Floor
                                            Los Angeles, California 90017-2566

                                            Elizabeth A. McNamara
                                            DAVIS WRIGHT TREMAINE LLP
                                            1251 Avenue of the Americas, 21st Floor
                                            New York, NY 10020

                                            Attorneys for Plaintiffs