1 | Elizabeth A. McNamara (*Pro Hac Vice* Application forthcoming)
2 | lizmcnamara@dwt.com
  | Davis Wright Tremaine LLP
3 | 1251 Avenue of the Americas, 21st Floor
  | New York, New York 10020
  | Telephone: (212) 603-6437
4 | Fax: (212) 489-8340

5 | Sean M. Sullivan, Esq. (Cal. Bar No. 229104)
  | seansullivan@dwt.com
6 | Arleen Fernandez (Cal. Bar No. 318205)
  | arleenfernandez@dwt.com
7 | Davis Wright Tremaine LLP
  | 865 South Figueroa Street, 24th Floor
8 | Los Angeles, California 90017-2566
  | Telephone: (213) 633-6800
9 | Fax: (213) 633-6899

10 | Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP; UNIVERSAL CITY STUDIOS LLC; UNIVERSAL TELEVISION LLC; UNIVERSAL CONTENT PRODUCTIONS LLC; DREAMWORKS ANIMATION LLC; DISNEY ENTERPRISES, INC.; PARAMOUNT PICTURES CORPORATION; AMAZON CONTENT SERVICES LLC; APPLE VIDEO PROGRAMMING LLC; WARNER BROS. ENTERTAINMENT INC.; NETFLIX US, LLC; COLUMBIA PICTURES INDUSTRIES, INC.; and, SCREEN GEMS, INC.<br><br>Plaintiffs,<br><br>vs.<br><br>DWAYNE ANTHONY JOHNSON d/b/a ALLACCESSTV and QUALITY RESTREAMS; and DOES 1-20,<br><br>Defendants. | **Case No. 2:21-cv-09361-AB (MRWx)**<br><br>**DECLARATION OF STEVE KANG IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>Judge:     Hon. Andre Birotte Jr.<br>Date:      January 7, 2022<br>Time:      10:00 a.m.<br>Courtroom: 7B<br><br>Filed concurrently herewith:<br>(1) Motion for Preliminary Injunction<br>(2) Declaration of Jan Van Voorn<br>(3) Declaration of Sean M. Sullivan<br>(4) [Proposed] Preliminary Injunction<br><br>Action Filed: December 2, 2021<br>Trial Date: None Set |

DECLARATION OF STEVE KANG ISO PLTF'S MOTION FOR PRELIMINARY INJUNCTION

# DECLARATION OF STEVE KANG

I, Steve Kang, declare as follows:

1. I am Vice President of Creative Content Protection at NBCUniversal Media, LLC ("NBCUniversal") and do anti-piracy work on behalf of Plaintiffs Universal City Studios Productions LLLP, Universal City Studios LLC, Universal Television LLC, Universal Content Productions LLC, DreamWorks Animation LLC, and other Universal affiliates (collectively "Universal"). The Universal entities are subsidiaries of NBCUniversal. I submit this declaration in support of Plaintiffs' Motion for a Preliminary Injunction ("Motion"). Except as to those matters stated on information and belief, the facts stated herein are known to me personally. As to those matters stated on information and belief, I am informed of the facts and believe them to be true. If called upon and sworn as a witness, I could and would testify competently to the contents of this Declaration.

2. In my position, I have responsibility for content protection issues involving the piracy of Universal motion pictures, television shows, and games. My responsibilities include the protection of Universal content from piracy throughout all elements of the supply chain.

3. I am familiar with Universal's strategies for the distribution of our copyrighted content, including our efforts to distribute such content to consumers across a range of legitimate digital and physical viewing options. Through publicly available sources, such as industry publications and the media, I also have general knowledge of the means by which other content providers, including the other Plaintiffs in this action, distribute their content.

***Universal's Business Model, and the Structure of the Entertainment Industry as a Whole, Depend on Copyright Owners' Control of the Distribution and Use of Their Copyrighted Works***

4. Universal is a well-known entertainment company engaged in, among other things, the production and distribution of motion pictures and/or television

DECLARATION OF STEVE KANG
ISO PLTF'S MOTION FOR PRELIMINARY INJUNCTION

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

shows ("Universal Works" or "Works"). Universal, along with the other Plaintiffs in this matter, and/or their affiliates, produce and distribute a significant portion of the world's most popular movies and television shows. Universal owns or controls the exclusive rights to reproduce, distribute, and publicly perform the Universal Works listed on Exhibit A to the Complaint, as evidenced by the copyright registration certificates for the Works.

5. Universal has not licensed or authorized Defendants to reproduce, distribute, or publicly perform its Works.

6. Universal disseminates its Works to the public through numerous distribution channels, including a worldwide network of authorized licensees, distributors, and retailers, including online distributors and retailers. As detailed further below, these include, among others, digital streaming services, cable and satellite television providers, DVDs, Blu-ray, and UHD Discs (and box sets thereof).

7. Universal and its affiliates invest substantial resources to bring the Works to consumers. Each motion picture and television series project entails substantial risk. The upfront costs of producing, marketing, and distributing a major motion picture frequently are in the tens of millions of dollars, or exceed that amount. Similarly, for television programs, producing, marketing, and distributing a television series requires a multi-million dollar investment. Universal's ability and willingness to incur this type of risk depends on its ability to earn a return on its investments by receiving remuneration for the rights to reproduce, distribute, and perform its Works.

8. Universal's ability to control the use of its copyrighted Works is the linchpin of its business. Universal authorizes the legitimate distribution and public performance of its Works in various formats and through multiple distribution channels, including, by way of example:

(a) through cable and direct-to-home satellite services (including basic,

3

DECLARATION OF STEVE KANG
ISO PLTF'S MOTION FOR PRELIMINARY INJUNCTION

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

premium, and "pay-per-view");

(b) through licensing of Works to broadcast television networks and linear video programming services;

(c) through authorized, licensed Internet video-on-demand ("VOD") services, whether paid or advertising-supported, including those operated by NBCUniversal's Peacock, Amazon Prime Video, iTunes, Apple TV+, Netflix, Google Play, Disney+, and Vudu;

(d) through authorized, licensed Internet or over-the-top ("OTT") streaming services that offer linear and other programming similar to that offered by traditional cable providers, including those offered by Hulu + Live TV, DirecTV Stream, fubo TV, Sling TV, and YouTube TV;

(e) for private home viewing on DVD, Blu-ray, and UHD discs;

(f) for exhibition in theaters when possible due to COVID-19[1]; and

(g) for over-the-air broadcast television.

9. Each of these options is known as a "distribution channel" and is designed to provide different value to consumers. Through publicly available sources, such as industry publications and the media, I am aware that the other Plaintiffs in this matter use the same or similar distribution channels to offer their content to consumers.

10. Universal, like many other studios, utilizes a practice that is known as "windowing." With respect to motion pictures, windowing makes Universal's Works available through different distribution channels at different times following the initial release of a particular title. Universal's agreements with distributors and licensees generally provide specific restrictions on when the distributor or licensee

---

[1] As of the time of this declaration, theatrical distribution continues to be at least partially disrupted by the COVID-19 pandemic.

4

DECLARATION OF STEVE KANG
ISO PLTF'S MOTION FOR PRELIMINARY INJUNCTION

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

has the right to distribute or perform that title. Distributors and licensees generally will pay more for the right to distribute or perform motion pictures in an earlier window—when that content is new, or newer—than for comparable rights during later windows. Some distributors and licensees will pay more for the exclusive right to distribute or perform Universal's motion pictures during a particular time period.

11. The concept of windowing also applies to television series, as such works are also made available through different distribution channels at different times. For example, a television series may be exclusively licensed to a television network (e.g., NBC or CBS) for the series' initial distribution and also licensed to other distributors for a later period in the show's life and/or for a different mode of distribution.

12. Internet distribution channels, such as VOD services (e.g., Peacock and Netflix) and OTT services (e.g., Hulu + Live TV, DirectTV Stream, and Sling TV), have become increasingly important to the entertainment business in recent years. As consumers increasingly opt for legitimate VOD and internet streaming options over other entertainment distribution channels, Universal's business model has evolved to match the market. For example, on July 15, 2020, NBCUniversal launched Peacock, which offers VOD streaming of popular television series, such as *Saturday Night Live* and *30 Rock*, as well as popular films. Universal's digital distribution therefore has become increasingly critical to the company's ability and willingness to take the significant financial risks necessary to produce motion pictures and television series.

13. As with the other Plaintiffs, Universal's contractual relationships with its distributors and licensees require the investment of significant time and resources. Universal employs numerous individuals throughout the company who work full time negotiating or maintaining the company's relationships with its distributors and licensees.

DECLARATION OF STEVE KANG
ISO PLTF'S MOTION FOR PRELIMINARY INJUNCTION

5

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

***Defendants Deprive Universal of Its Right to Control the Distribution and Use of Its Works***

14. I am familiar with the streaming services offered by Defendants under the monikers AllAccessTV ("AATV") and Quality Restreams based on my review of the investigation materials summarized and documented in the Declarations of Jan van Voorn and accompanying exhibits.

15. Defendants' AATV service offers an IPTV service that provides thousands of channel offerings, including unauthorized streams from legitimate preprogrammed channels and "24/7" channels, which offer collections of television or motion picture titles. Defendants also sell access to AATV's VOD service, which contains more than 600 movie titles and 600 television series. These services are offered to AATV's customers (and customers of AATV's resellers) twenty-four hours a day, seven days a week for a monthly subscription fee.

16. It is also my understanding that Defendants operate Quality Restreams as a "content-source" for other IPTV services, including AATV. The Quality Restreams service provides third-party IPTV services with thousands of channel offerings, as well as VOD offerings.

17. The titles made available by Defendants via their services—without authorization from the relevant copyright holders—include many of the world's most popular television programs and motion pictures. The copyrighted content streamed and reproduced without authorization includes Universal Works, such as *Jurassic World, Fast & Furious Presents: Hobbs & Shaw, Jason Bourne*, and episodes of *The Office*.

18. Defendants' unauthorized activities cause and induce the widespread, unlicensed use of copyrighted works, including Universal Works. This unlicensed use threatens the cornerstone of Universal's business, as well as the business of other similarly situated studios—the exclusive control over the reproduction and public performance of copyrighted works. Indeed, loss of such control by Universal

6

DECLARATION OF STEVE KANG
ISO PLTF'S MOTION FOR PRELIMINARY INJUNCTION

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

and the other Plaintiffs undermines the very economic structure of the entertainment industry.

19. Defendants thus threaten a variety of serious and irreparable harms to Universal and the other Plaintiffs if Defendants are permitted to continue their infringing activities.

**Defendants Threaten Universal's Relationships with Its Legitimate Licensees and Its Distribution Strategies**

20. When Defendants' subscribers (and their customers) access an unauthorized stream of one of Plaintiffs' works, including any of the Universal Works, Universal and the other Plaintiffs are not compensated. Defendants' unauthorized streaming and reproduction, and facilitation of others' unauthorized streaming and reproduction, of content curated by Defendants has caused, and will continue to cause, Universal and the other Plaintiffs this very direct and fundamental harm on a daily basis.

21. But the harms to Universal from the operation of the AATV and Quality Restreams infringing services and Defendants' conduct go well beyond the already substantial harm of not being compensated for the exploitation of its Works. The ultimate success or failure of Universal's business depends on a carefully designed strategy to build demand for its content with consumers across a variety of viewing options provided by its distributors and licensees. Like other Plaintiffs, Universal negotiates with its distributors and licensees over, among other subjects, *how* (under what conditions), *when* (on what date and for what duration), for *what* (which titles), and for *how much* (at what price) they can obtain the rights to distribute and/or publicly perform its content. Windowing, as discussed above, is an important part of this overall strategy and Universal's legitimate licensees each fit into this windowing strategy.

22. Universal, either directly or through its authorized distributors, has agreed to very detailed terms and conditions governing the performance or

7

DECLARATION OF STEVE KANG
ISO PLTF'S MOTION FOR PRELIMINARY INJUNCTION

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

reproduction of its Works, including by online streaming services. For example, Universal's streaming agreements generally include, among other terms: (a) detailed provisions requiring technological measures to protect the security of the transmission of the content to ensure against unlawful access, copying, and other forms of piracy; (b) provisions requiring minimum levels of quality for the content's display, to ensure that consumers are receiving appropriate value; and (c) restrictions on making the content available during certain periods where other distributors or licensees have obtained exclusive distribution rights. Through publicly available sources, such as industry publications and the media, I understand that such provisions are common in agreements between streaming services and the other Plaintiffs.

23. These licensing terms are important to Universal and to its overall objectives for distribution, as well as to Universal's distributors and licensees. For example, the provisions regarding content security help to ensure that Universal's content is not readily susceptible to further piracy.

24. Universal's relationships with the companies that distribute, license, and perform its content are very important. Universal's success is intertwined with that of its licensed distributors and the overall integrity of the content-delivery ecosystem.

25. These legitimate services negotiate their licenses and abide by contractual restrictions. Defendants circumvent the licensing process altogether, do not operate in accordance with contractual requirements, and do not pay for the content that they exploit. As such, unlicensed services like AATV and Quality Restreams undercut and unfairly compete with licensed services. This unfair competition undermines Universal's contractual commitments to and relationships with its distributors and licensees and its negotiating position for future agreements with authorized distributors and licensees.

26. I understand that certain counterparties to authorized distribution and

8

DECLARATION OF STEVE KANG
ISO PLTF'S MOTION FOR PRELIMINARY INJUNCTION

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

license agreements have stated, during negotiations for new and renewed agreements, and during the duration of such agreements, that they find it difficult to compete with unlicensed services like AATV and Quality Restreams that do not operate in accordance with contractual requirements and do not pay for the content they exploit.

**Defendants Encourage the Growth of Demand for Infringing Content**

27. Based on my experience in the industry and understanding of illicit services against which Universal and its distributors and licensees must compete, I believe the growth and popularity of sources of infringing streams are fueled in part by the ease and convenience of the infringement that Defendants engage in, contribute to, and induce.

28. Defendants encourage and induce infringement by providing the sources of infringing streams. Defendants' creation and fostering of their reseller network has further contributed to a growth in the use, access, and popularity of such infringing streams.

29. To the extent AATV and Quality Restreams source their infringing content from third-party services, these services do not go through authorized and legitimate channels to obtain their content and therefore owe their very existence and ability to attract customers to the easy-to-access, infringing streams available via the services.

30. For the same reasons as explained above, such conduct undermines demand for legitimate copyrighted content and harms Universal.

**Defendants Fuel the Growth of Demand for Infringing Content By Accustoming Customers to Low-Cost, Infringing Streams**

31. Defendants facilitate their customers' (and their customers) ability to view infringing streams of copyrighted content, including Universal Works, rather than pay for legitimate, authorized IPTV and VOD services. The infringing streams provided on these services, used as Defendants intend and encourage, do most of

9

DECLARATION OF STEVE KANG
ISO PLTF'S MOTION FOR PRELIMINARY INJUNCTION

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

the heavy lifting for customers and reduce or eliminate at least two significant obstacles that customers desiring access to infringing streams previously faced: (1) locating infringing material, and (2) accessing a functioning, high-speed source for that material. They also provide the mistaken and harmful impression that Plaintiffs' content should be instantly and conveniently accessible for very little, as Defendants' services offer broader and cheaper channel offerings than those provided by legitimate licensed services.

32. Accordingly, the unlicensed offerings available on Defendants' services undermine the value of legitimate distribution channels, inhibiting their development and growth. This poses a significant threat to Universal's business and to the businesses of its distributors and licensees.

**Defendants Expose Universal to the Risk of Piracy By Other Actors**

33. Internet transmissions of copyrighted content are very susceptible to copying and further distribution without authorization. For that reason, as I have already explained, when Universal enters into legitimate license agreements with licensees, Universal requires technological measures to ensure against unlawful access, copying, and piracy of transmitted content.

34. Such technological measures are typically consistent with industry standards, which evolve over time to incorporate new technology.

35. Defendants operate without employing such technological safeguards, and as such further expose Universal to the risk of piracy by other actors who gain access to unauthorized content available via Defendants' services.

**Defendants' Conduct Threatens Imminent, Irreparable Harm to Universal and the Other Plaintiffs**

36. The extent of Universal's losses from Defendants' ongoing, illegal conduct cannot be calculated with precision.

37. Without the relief requested in this action, Defendants will continue to offer, without authorization, access to thousands of television shows and motion

DECLARATION OF STEVE KANG
ISO PLTF'S MOTION FOR PRELIMINARY INJUNCTION

10

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

pictures seven days a week, twenty-four hours a day unabated—infringing Universal's public performance and reproduction rights in numerous copyrighted works. If this continues, Universal will continue to suffer irreparable harm that no future damages award can mitigate.

38. Based on my experience in and understanding of the industry, I believe the harms to the other Plaintiffs from Defendants' infringing activities are comparably imminent and irreparable to the harms to Universal.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that this declaration was executed on this 1st day of December 2021 at Los Angeles, California.

By: _____
Steve Kang

11

DECLARATION OF STEVE KANG
ISO PLTF'S MOTION FOR PRELIMINARY INJUNCTION

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899